**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ITO CORPORATION OF BALTIMORE,
Petitioner,

v.

EDWARD F. GREEN; DIRECTOR, OFFICE

OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 98-1972

On Petition for Review of an Order of the
Benefits Review Board.
(97-1072)

Argued: April 9, 1999

Decided: July 23, 1999

Before WILKINSON, Chief Judge, and
WIDENER and KING, Circuit Judges.

_____

Petition for review granted and award modified by published opinion.
Judge King wrote the opinion, in which Chief Judge Wilkinson and
Judge Widener joined.

_____

**COUNSEL**

**ARGUED:** Stan Musial Haynes, SEMMES, BOWEN & SEMMES,
Baltimore, Maryland, for Petitioner. Andrew David Auerbach,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.,

for Respondent Director; Bernard Jerome Sevel, SEVEL & SEVEL, P.A., Baltimore, Maryland, for Respondent Green. **ON BRIEF:** Marvin Krislov, Deputy Solicitor for National Operations, Carol A. De Deo, Associate Solicitor for Employee Benefits, Janet R. Dunlop, Counsel for Longshore, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

## OPINION

KING, Circuit Judge:

ITO Corporation of Baltimore petitions for review of the final Decision and Order of the Benefits Review Board (BRB) awarding disability benefits to the respondent, Edward F. Green, who was employed by ITO as a longshore worker.[1] The question presented for our review concerns the proper measure of benefits under Section 8(c) of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950, where an eligible claimant has been partially but permanently disabled by each of two injuries sustained to different parts of his or her body.

The combined weekly benefit awarded by the BRB to Green in compensation for his independently disabling ankle and shoulder injuries exceeded the amount to which he would have been entitled had he been totally disabled. We agree with ITO that such a result is illogical, especially as a less onerous alternative exists that fairly and fully compensates Green for the entirety of his injuries. We therefore grant the petition for review and modify the benefit award as explained below.

_____

[1] See 33 U.S.C. § 921(c) (providing for review of final orders of the BRB "in the United States court of appeals for the circuit in which the injury occurred"). The Director of the Office of Workers' Compensation Programs for the Department of Labor participates in this appeal as co-respondent, pursuant to Fed. R. App. P. 15(a)(2)(B).

2

I.

On May 14, 1983, Green fell about fifteen feet from a cargo container onto the deck of a ship, fracturing his left ankle and left shoulder. ITO paid for Green's hospital stay and subsequent recovery, and it also paid him a weekly benefit for the duration of his temporary total disability.**2**

Though recompensed for the transitory effects of the accident, Green was entitled to additional compensation for the lasting attenuation of his physical abilities. Accordingly, Green filed a claim with the Department of Labor under Section 8(c) of the LHWCA, seeking benefits for "disability partial in character but permanent in quality." 33 U.S.C. § 908(c).

ITO timely controverted its liability for the claim, see 20 C.F.R. § 702.251, and the matter came on for hearing before an Administrative Law Judge (ALJ). Upon considering the medical and other evidence submitted by the parties, the ALJ concluded that Green had suffered a 15% permanent disability to his shoulder, and a 25% permanent disability to his ankle, "such disability prevent[ing] the Claimant from returning to his job as a longshoreman." ALJ's Decision and Order of July 22, 1987.

On a subsequent remand from the BRB, the ALJ clarified that, even absent the ankle injury, Green would have been foreclosed from engaging in his former work:

> The Employer argues that the . . . injury to Claimant's shoulder does not cause Claimant to be disabled when considered alone. However, . . . the evidence of record fails to establish that Claimant can return to his previous job on the

---

**2 See** 33 U.S.C. § 907(a) (employer must supply "such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require"); 33 U.S.C. §§ 904(a), 908(b) (imposing liability on employer to pay compensation for temporary total disability at a rate of two-thirds the affected employee's average weekly wage).

3

> basis of such a disability. . . . Accordingly, . . . I find that Claimant has sustained a partial permanent disability based on his shoulder injury.

ALJ's Decision and Order on Remand of May 29, 1991, at 7-8. The problem remained of how to fairly compensate Green for the partial loss of function in both his ankle and his shoulder.

II.

A.

Section 8(c) of the LHWCA contains a schedule of benefits payable for the permanent physical deprivation of specific parts or attributes of the body. See 33 U.S.C. § 908(c)(1)-(12) (pertaining to the loss of arms and legs, the lesser appendages, and eyes), (c)(13) (relating to the loss of hearing in one or both ears); see also § 908(c)(18) (providing that "[c]ompensation for permanent total loss of use of a member shall be the same as for loss of the member"). The compensation for the particular disability is expressed in terms of payment for a fixed number of weeks at a rate of two-thirds the claimant's average weekly wage at the time of the injury.

The complete loss (or loss of use) of a foot, for example, entitles the claimant to receive the prescribed rate for a 205-week period. § 908(c)(4). Where the loss is incomplete, however, the duration of the award is proportionately reduced. § 908(c)(19). The parties do not dispute that, in Green's case, the 25% permanent disability to his ankle requires ITO to pay him two-thirds of his average wage for 51.25 weeks. Inasmuch as Green was earning $599 per week at the time of his injury, the weekly benefit is approximately $400.

Calculating the compensation due Green solely as the result of his shoulder disability is only slightly more complex. Section 908(c)(21) is the "catch-all" provision pertaining to disabilities not included within the schedule:

> In all other cases in the class of disability, the compensation shall be 66-2/3 per centum of the difference between the

4

> average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability.

Green's post-injury wage-earning capacity was determined to be $305 per week. ALJ's Decision and Order on Remand of May 29, 1991, at 6-7. As this figure represents a decrease of nearly $300 from Green's average weekly wage at the time of his injury, the proper compensation for Green's shoulder disability is just short of $200 per week.[3]

---

[3] Although the ankle disability appears at first to be "worth" more than the shoulder disability, the discrepancy evaporates with the passage of time. The duration of the award for the ankle is finite, resulting in benefit payments totaling about $20,000 (51.25 weeks x $400/week). By contrast, the compensation for Green's shoulder injury is, by the terms of § 908(c)(21), "payable during the continuance of partial disability." At an approximate weekly rate of $200, the total benefits received by Green for his shoulder disability will exceed those for his ankle disability to the extent that the payments for the former continue in excess of two years.

This odd result is, of course, attributable to the apples-and-oranges approach taken by the statute depending on whether a particular disability is one within the schedule or is instead "non-scheduled." The presumed effect of scheduled disabilities on a claimant's wage-earning capacity has been set by Congress within a fairly narrow range. Benefits are payable for a specific duration regardless of the actual impact of the disability on the claimant's prospects of returning to longshore (or any other) work. Thus, a claimant is entitled to compensation for anywhere from 15 weeks (for losing a ring finger) to 312 weeks (for losing an entire arm), without having to prove the deleterious effect, if any, of the injury on his or her potential to earn income.

Conversely, when the disability is to the shoulder, back, or other non-scheduled area, the claimant is required by § 908(c)(21) to show a diminished capacity to earn wages. Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 297 (1995) ("For these nonscheduled injuries . . . loss of wage-earning capacity is an element of the claimant's case, for without the statutory presumption that accompanies scheduled injuries, a claimant is not `disabled' unless he proves `incapacity because of injury to earn the wages.'") (citations omitted). Once the claimant has satisfied this burden, however, the extra difficulty incurred in proving the claim is rewarded by the conferment of benefits payable for an indefinite period.

B.

The BRB, considering the matter for the third time, finally con-
cluded that Green was entitled to concurrent payments for his ankle
and shoulder disabilities, i.e., $600 per week for 51.25 weeks and
$200 per week thereafter. Green v. I.T.O. Corp. of Baltimore, 32
BRBS 67, 70 (1998).**4** Under this payment scheme, the benefits dis-
bursed by ITO during the first year would be roughly equivalent to
Green's earnings at the time of his accident.

The Director maintains that the BRB's approach to compensating
Green for his permanent partial disabilities cannot be logically recon-
ciled with the LHWCA's limitation of payments for permanent total
disability to two-thirds of the claimant's average weekly wage. See 33
U.S.C. § 908(a). By the terms of the statute, had Green been totally
disabled by the injuries he sustained in the fall, he could never have

_____

Depending on one's point of view, this approach could reasonably be
seen as either tending to overcompensate claimants with non-scheduled
disabilities, or as under compensating those receiving payments pursuant
to the schedule. Nonetheless, despite its inevitable inequities and the
unwieldiness of its application, this aspect of the system apparently func-
tions in the manner intended by Congress, as evidenced by its being left
essentially undisturbed since its enactment in 1927.

**4** The BRB in Green vacated the ALJ's Decision and Order on Second
Remand insofar as it had reduced the award for Green's shoulder disabil-
ity by half -- to $100 per week -- on the theory that Green's ankle dis-
ability contributed equally to his loss of wage-earning capacity. As the
BRB pointed out, the reasoning of the ALJ (the second one to have con-
sidered the claim) was flawed in light of his predecessor's earlier finding
that either disability standing alone would have prevented Green from
returning to his former employment: "There is no danger of double
recovery . . . if claimant's shoulder injury alone could cause the entire
loss in wage-earning capacity." Green, 32 BRBS at 70.

Certainly, ITO is not permitted to avoid compensating Green fully for
his shoulder disability merely because he also happened to suffer a debil-
itating ankle injury. Green's award for his shoulder disability cannot be
reduced in the face of a finding that he would be no better off financially
had he never injured his ankle.

6

received more than $400 in compensation in any single week. It makes little sense, the Director contends, to compel ITO to pay compensation at a greater rate for a less serious occurrence.

We are persuaded by the Director's argument. In no case should the rate of compensation for a partial disability, or combination of partial disabilities, exceed that payable to the claimant in the event of total disability. To hold otherwise would be to conclude that the whole may be less than the sum of its parts, and we are fairly certain that -- although our authority extends to a myriad of matters -- we are without jurisdiction to repeal the laws of mathematics.[5]

One solution to the problem, suggested by the Director, is to run the awards consecutively. Under this approach, Green would receive his maximum weekly benefit of $400 for the first 51.25 weeks of the award period, and $200 per week thereafter. Indeed, in cases where a claimant has sustained more than one injury listed in the schedule, the LHWCA specifies that the awards are to run consecutively. See § 908(c)(22) (stating the general rule of consecutive awards, but excepting situations involving permanent total disability or otherwise covered by § 908(c)(17), see note 5, supra).

The Director's proposed solution is imperfect, however, insofar as it fails to pay anything to Green in compensation for the disability to his shoulder during the first year of the award period. Green has demonstrated his entitlement to benefits for his shoulder, and there is nothing in the LHWCA that authorizes us to permanently deprive him of a year's worth of those payments. In fact, as we have noted above, § 908(c)(21) specifically states that benefits for non-scheduled injuries are "payable during the continuance of partial disability." We can only construe the words "during the continuance" to mean that Green must be paid compensation for the disability to his shoulder from the beginning of the award period.

_____

**5** A useful analogue may be found in § 908(c)(17), which provides that "[c]ompensation for loss of two or more digits, or one or more phalanges of two or more digits, of a hand or foot may be proportioned to the loss of use of the hand or foot occasioned thereby, but shall not exceed the compensation for loss of a hand or foot" (emphasis added).

7

Because Green is entitled to approximately $200 per week in compensation for his shoulder disability from the commencement of the award period, and because his total weekly benefit cannot exceed $400, it follows that he may be paid a maximum of $200 per week in compensation for his ankle disability -- half the rate specified by the BRB. Consequently, in order to ensure that the benefit for the ankle disability is paid in full, the payment period for this disability must be doubled from 51.25 weeks to 102.5 weeks. This approach fairly compensates Green for both of his injuries, and is consistent with the letter and intent of the applicable law.

III.

The petition for review is granted, and the award of benefits is modified to reflect the foregoing discussion. Green shall be paid one-third of his average weekly wage for 102.5 weeks in compensation for his ankle disability, and two-thirds of the diminution in his wage-earning capacity in compensation for his shoulder disability, for the continuance of that disability.

PETITION FOR REVIEW GRANTED AND AWARD MODIFIED