*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-418

NATHALIA L. BROWN, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

AND

POTOMAC ELECTRIC POWER COMPANY, INTERVENOR.

Petition for Review of Decision of the
District of Columbia Department of Employment Services
(CRB No. 10-141(2))

(Argued October 10, 2013                    Decided January 23, 2014)

*Matthew J. Peffer* for petitioner.

*Shawn M. Nolen*, with whom *Kevin J. O'Connell* was on the brief, for intervenor.

*Irvin B. Nathan*, Attorney General for the District of Columbia, and *Todd S. Kim*, Solicitor General, filed a statement in lieu of brief for respondent.

Before GLICKMAN and MCLEESE, *Associate Judges*, and NEWMAN, *Senior Judge*.

GLICKMAN, *Associate Judge*: Nathalia Brown petitions for review of a decision by the Compensation Review Board ("CRB" or "the Board") of the Department of Employment Services denying her claim for permanent partial disability benefits under the Workers' Compensation Act.[1] Brown contends that the CRB erred in two principal respects: *first*, by raising sua sponte a previous suspension of her benefits on account of her refusal to cooperate with vocational rehabilitation as a continuing bar to any disability compensation award; and *second*, in holding that if the bar is removed and Brown is awarded permanent partial disability compensation for both "schedule" and "non-schedule" injuries, those partial disability awards must be paid to her consecutively rather than concurrently because concurrent payments would exceed the payments that Brown could receive if she were permanently and totally disabled.

Brown's challenge to the CRB's suspension-of-benefits ruling presents unsettled issues concerning the interpretation of the Workers' Compensation Act and the procedural rules that the Board follows. Because the Board did not provide a reasoned analysis and resolution of those issues, we vacate its decision and remand this case for further proceedings. However, we affirm the Board's ruling

---

[1] D.C. Code §§ 32-1501 to 32-1545 (2012 Repl.).

that concurrent compensation for permanent partial disabilities arising out of the same work accident cannot exceed the compensation authorized for permanent total disability.

## I. Factual and Procedural Background

Brown sustained the work-related injuries that gave rise to her present claims while she was working as a lead shop mechanic for intervenor Potomac Electric Power Company ("PEPCO"). On March 26, 1995, Brown was standing on a ladder, running electrical lines in the ceiling to repair a light fixture, when her right hand came into contact with a live wire. A co-worker pushed her off the ladder to break the electrical contact and save Brown from electrocution. In addition to the burns she received from the electric shock, Brown injured her neck, back, and shoulder in the fall. Her back injury subsequently led her to sustain other permanent injuries that need not be detailed here.

The lasting physical impairments resulting from Brown's work-related injuries made it impossible for her to resume her former position. PEPCO attempted to accommodate her return to work by offering her a variety of light duty positions, but Brown found all of them unsatisfactory. In December 1998, she ceased working altogether.

PEPCO voluntarily paid Brown temporary total disability benefits.[2]   In November 2005, the company engaged a vocational rehabilitation consultant to evaluate Brown and assist her in applying for available sedentary jobs within her physical limitations for which she was qualified.   However, Brown attended only four of her eight scheduled rehabilitation appointments and did not pursue the job opportunities identified by the consultant.   Moreover, in January 2006, Brown rejected PEPCO's renewed offer of another light duty position.

Instead, Brown filed a claim for permanent total disability benefits under the Workers' Compensation Act.  PEPCO contested the claim, which proceeded to a hearing before an Administrative Law Judge ("ALJ") in the Hearings and Adjudication Section of the Office of Employment Services.  The ALJ rendered his decision in a January 18, 2007, compensation order.[3]  Finding that Brown was not totally disabled, that she had voluntarily limited her income by failing to accept offered employment, and that she had refused unreasonably to cooperate with vocational rehabilitation, the ALJ denied her claim for permanent total disability

---

[2]   *See* D.C. Code § 32-1515 (a) (requiring employers to pay worker's compensation benefits voluntarily without an award "except where liability to pay compensation is controverted by the employer").

[3]   *Brown v. Potomac Elec. Power Co.*, AHD No. 98-259B, OWC No. 525617, 2007 DC Wrk. Comp. LEXIS 12 (D.C. Dep't of Emp't Servs. 2007).

benefits and, in accordance with D.C. Code § 32-1507 (d), declared that Brown's "temporary total disability benefits should be suspended until such time as she expresses a willingness to cooperate" with vocational rehabilitation.[4] The CRB affirmed the compensation order on appeal.[5]

Brown did not petition for further review. Neither did she seek to terminate the suspension of her benefits by expressing a willingness to cooperate with vocational rehabilitation. Instead, she commenced a second proceeding by filing a new claim requesting permanent partial (rather than total) disability benefits. Brown sought "schedule" benefits for partial impairments of her arms and legs plus "non-schedule" benefits for wage loss occasioned by the injuries to her back and neck.[6]

---

[4] *Id.* at *25. In pertinent part, D.C. Code § 32-1507 (d) provides that when an employee "unreasonably refuses . . . to accept vocational rehabilitation the Mayor shall, by order, suspend the payment of further compensation."

[5] *Brown v. Potomac Elec. Power Co.*, CRB No. 07-46, 2007 DC Wrk. Comp. LEXIS 237, at *8 (D.C. Dep't of Emp't Servs. 2007).

[6] The Workers' Compensation Act divides permanent partial disabilities into two categories, "schedule" and "non-schedule." Schedule disabilities are those involving the loss or impairment of certain specified body parts, e.g., the loss of an arm, leg, or eye. For each such injury, a worker is entitled to receive 66 2/3% of his or her average weekly wages for a fixed number of weeks that varies depending on the particular body part injured and the degree of its impairment, regardless of the actual wage loss the worker sustains as a result of the

*(continued…)*

In opposition, PEPCO contended *inter alia* that Brown's physical complaints were exaggerated and that she had voluntarily limited her income.[7] PEPCO also argued that if Brown were awarded both schedule and non-schedule benefits, the awards should be paid consecutively rather than concurrently (i.e., payment of the non-schedule wage loss benefits should be deferred until the schedule benefits were exhausted). However, PEPCO did not resurrect its argument that Brown was ineligible to receive any benefits at all by virtue of her failure to cooperate with vocational rehabilitation; it did not rely on the prior finding in the January 2007 compensation order to that effect.

---

*(continued…)*

injury. *See* D.C. Code § 32-1508 (3)(A)-(S). In contrast, for other partially disabling injuries (i.e., to parts of the body not listed in the "schedule," such as the back or neck), the worker's disability compensation is measured by his or her actual or imputed wage loss attributable to the injuries. *See* D.C. Code § 32-1508 (3)(V). A worker who has a schedule injury may not opt to recover actual lost wages in lieu of the fixed amount available for such an injury. *See Morrison v. D.C. Dep't of Emp't Servs.*, 736 A.2d 223, 225 (D.C. 1999).

[7] Voluntary limitation of income affects the computation of a partially disabled worker's non-schedule disability benefits by reducing the worker's compensable wage loss. *See* D.C. Code § 32-1508 (3)(V)(iii) (stating, in pertinent part, that "[i]f the employee voluntarily limits his or her income or fails to accept employment commensurate with the employee's abilities, the employee's wages after the employee becomes disabled shall be deemed to be the amount the employee would earn if the employee did not voluntarily limit his or her income or did accept employment commensurate with the employee's abilities").

On April 30, 2009, after an evidentiary hearing, the ALJ found Brown to be permanently partially disabled and entitled to schedule benefits for impairments of her arms and legs[8] plus wage loss benefits stemming from the non-schedule injuries to her back and neck.[9] Noting the prior finding that Brown had voluntarily limited her income, the ALJ ruled that for purposes of computing her wage loss benefits, her post-disability wages "shall be deemed to be the amount that she would earn if she did not voluntarily limit her income or did accept employment commensurate with her abilities."[10] The ALJ further ruled that Brown's awards were to "run consecutively" pursuant to D.C. Code § 32-1508 (U).[11] The ALJ did

---

[8] The ALJ found Brown entitled to schedule benefits for a 64% impairment of her left arm and 15% impairments of her right arm and of each of her legs. *See* D.C. Code § 32-1508 (3)(A) (loss of arm), (B) (loss of leg), and (S) ("Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member.").

[9] *Brown v. Potomac Elec. Power Co.*, AHD No. 98-259D, OWC No. 525617, 2009 WL 1689622 (D.C. Dep't of Emp't Servs. 2009).

[10] *Id.* at \*7; *see* D.C. Code § 32-1508 (3)(V)(iii). The ALJ made no finding as to what this imputed amount was, or what the amount of Brown's wage loss benefits should be.

[11] *Brown*, 2009 WL 1689622, at \*7. D.C. Code § 32-1508 (U) provides that schedule awards to partially disabled workers "shall run consecutively." It does not address how payments should be made when such workers also have received a non-schedule wage loss award.

not address whether Brown's benefits were suspended because of her refusal to cooperate with vocational rehabilitation.

Brown appealed the compensation award to the CRB, arguing only that her non-schedule benefits should be paid concurrently with her schedule award payments rather than consecutively. She did not challenge the ALJ's ruling that her wage loss benefits should reflect the finding that she had voluntarily limited her income. For its part, PEPCO, which did not cross-appeal,[12] did not cite Brown's failure to cooperate with vocational rehabilitation as a basis to deny or withhold her benefits.

In August 2009, the CRB issued its decision.[13] Although no one had raised the issue, the CRB brought up the January 2007 suspension of Brown's benefits on account of her failure to cooperate with vocational rehabilitation. There was, the Board noted, "nothing in the record before the CRB that shows this finding was modified." If Brown's benefits therefore "remain[ed] suspended" the Board declared, then "the ALJ did not have authority to enter any award" in her favor.

---

[12] *See* 7 DCMR § 258.11 (2013).

[13] *Brown v. Potomac Elec. Power Co.*, CRB No. 09-085 (D.C. Dep't of Emp't Servs. 2009). This decision is unreported.

Primarily for this reason,[14] the CRB vacated the awards and remanded the matter for the ALJ to determine, *inter alia*, whether Brown was eligible to receive any award in light of the January 2007 failure-to-cooperate finding. "If the ALJ determines that the benefits still are suspended," the CRB declared, "then the ALJ should dismiss the present Application."

"To foster judicial economy," the CRB nonetheless went on to consider whether any dual awards to Brown of schedule and non-schedule benefits should be payable consecutively or concurrently. Despite what it called "the general rule that an injured worker may receive concurrent payment of permanent partial schedule and permanent partial wage loss benefits," the Board held that this rule did not apply where a claimant seeks "permanent disability benefits that, when paid concurrently, would exceed the amount of an award that she could receive for permanent total disability."[15]

---

[14] The CRB also questioned the basis on which the ALJ had awarded wage loss benefits in view of the finding that Brown had voluntarily limited her income. We assume that the Board's uncertainty concerned the ALJ's failure to determine the amount of Brown's wage loss award. Inasmuch as Brown does not complain of this aspect of the Board's decision, it is unnecessary for us to address the matter.

[15] The Board's reference to a "general rule" that permanent partial schedule and non-schedule benefits may be paid concurrently is puzzling. As authority for such a "general rule," the Board cited its then-recent decision in *Petway v. Howard Univ. Hosp.*, CRB No. 08-203, 2009 DC Wrk. Comp. LEXIS 29 (D.C. Dep't of

*(continued…)*

On remand, the ALJ concluded that a suspension of benefits for failing to cooperate with vocational rehabilitation "ends only upon a demonstrated willingness of the injured party to participate in vocational rehabilitation," and that whether Brown demonstrated such a willingness "can only be addressed in a modification of the prior order" pursuant to the modification procedure set out in D.C. Code § 32-1524.[16]  Because Brown had not sought to modify the January 2007 order suspending her benefits on account of her failure to cooperate with vocational rehabilitation, the ALJ ruled that she was not entitled to the permanent partial disability benefits she sought.[17]

_____

*(continued…)*
Emp't Servs. 2009), in which it upheld concurrent awards of permanent partial schedule benefits and *temporary total* disability benefits.  (This court subsequently affirmed *Petway* in *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 994 A.2d 375 (D.C. 2010).)  As discussed below, the ruling in *Petway* is supported by a specific statutory provision stating that permanent partial disability benefits may be paid "in addition" to temporary benefits, but that provision does not speak to the concurrent payment of permanent schedule and non-schedule benefits.

[16]  *Brown v. Potomac Elec. Power Co.*, AHD No. 98-259D, OWC No. 525617, 2010 DC Wrk. Comp. LEXIS 149, at *8 (D.C. Dep't of Emp't Servs. 2010) (internal quotation marks omitted).

[17]  The ALJ therefore denied Brown's claim for relief without addressing further how her voluntary limitation of her income would affect a wage loss award.

The CRB affirmed this ruling. It rejected Brown's contention that the suspension of her temporary total disability benefits did not apply to her current claim for permanent partial disability benefits; "[t]he plain language of the Act," the Board explained, "does not discriminate as to the type of benefit to be suspended when a claimant fails to cooperate[.]"[18] Therefore, the Board held, Brown needed to obtain a modification of the January 18, 2007 order pursuant to D.C. Code § 32-1524 in order to be eligible for payment of any further disability compensation.[19] Brown filed a timely petition for review by this court.

## II. Standard of Review

Generally speaking, our review of a CRB decision in a workers' compensation case is deferential and limited to assessing whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[20] In this case, Brown's claims that the CRB violated its procedures in sua

---

[18] *Brown v. Potomac Elec. Power Co.*, CRB No. 10-141(2), 2012 DC Wrk. Comp. LEXIS 106, at *9 (D.C. Dep't of Emp't Servs. 2012).

[19] *Id.* at *10-11.

[20] *Clark v. District of Columbia Dep't of Emp't Servs.*, 772 A.2d 198, 201 (D.C. 2001); *see* D.C. Code § 2-510 (a)(3) (2012 Repl.). The scope of such review extends, where the issue is raised, to ensuring that the factual findings underpinning the decision are supported by substantial evidence in the record and

*(continued…)*

sponte raising the suspension issue and misconstrued the Workers' Compensation Act raise questions of law. As to such questions arising from decisions by administrative agencies, our review is subject to well-established doctrines mandating deference to an administrative agency's interpretation of its own rules and regulations and of the statute it is charged with implementing.[21]

### III. Suspension of Benefits

We begin with Brown's argument that the CRB erred in sua sponte raising the prior suspension of her workers' compensation benefits as a bar to her claim for permanent partial disability compensation. Her contention has both procedural and substantive aspects.

---

*(continued…)*
that the conclusions "flow[] rationally from the facts." *Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1111 (D.C. 2004).

[21] *See Mushroom Transp. v. District of Columbia Dep't of Emp't Servs.*, 761 A.2d 840, 844 (D.C. 2000) ("The agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history. . . . Indeed, we must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance.") (citation omitted); *Washington Times v. District of Columbia Dep't of Emp't Servs.*, 724 A.2d 1212, 1221 (D.C. 1999) ("[T]his court accords great deference to an agency's construction of its own regulations."); *see also Colbert v. District of Columbia Dep't of Emp't Servs.*, 933 A.2d 817, 819-20 (D.C. 2007).

As a procedural matter, it is unclear whether the CRB acted permissibly in raising the suspension-of-benefits issue in the manner it did. This court has never decided whether the CRB, in an appeal from an ALJ's compensation decision, may deny a disability claim on a ground not presented by the parties to the ALJ or considered by the ALJ. The Board itself has declared that it lacks such authority, however, in a case not mentioned in the decisions now before us. It was also problematic for the Board to inject the suspension-of-benefits issue when PEPCO had neither taken a cross-appeal from the ALJ's award nor raised the issue in opposition to Brown's appeal. Under these circumstances, we conclude that we must remand this case for the Board to consider and explain its authority to raise issues sua sponte.[22]

---

[22] Although Brown did not object before the CRB to its sua sponte introduction of the suspension-of-benefits issue, which she could have done by a motion for reconsideration or when she returned to the CRB on appeal after the remand, PEPCO does not argue that she forfeited her objection, and so we address the issue. *Cf. District of Columbia Hous. Auth. v. District of Columbia Office of Human Rights*, 881 A.2d 600, 611 (D.C. 2005) ("We have long held that we will not review a procedural claim that was not adequately raised at the agency level.") (citation omitted); *NLRB v. Harding Glass Co.*, 500 F.3d 1, 7 (1st Cir. 2007) (refusing to consider whether an agency erred in injecting an issue sua sponte where the complaining party "never raised a word of protest about the sua sponte nature of the ruling to the [agency], though it could have sought reconsideration on this basis.").

In addition, even if it was permissible for the Board to raise this seemingly forfeited issue sua sponte, we think there is another facet of its ruling that deserves further consideration by the Board on remand; namely, the Board's holding, over Brown's objections, that her right to receive benefits must remain suspended until such time as she obtains a modification of the January 2007 compensation order pursuant to D.C. Code § 32-1524. While we do not agree with Brown that the January 2007 suspension is inapplicable to her current application for permanent partial disability benefits, we do agree that requiring her to comply with the requirements of § 32-1524 to lift the suspension may be problematic. It raises an issue of statutory interpretation that the Board should consider on remand.

### A. Sua Sponte Character of the Board's Ruling

In the absence of an applicable statutory command or agency regulation, an administrative tribunal has wide latitude in adopting rules of procedure for the proceedings before it.[23] This authority extends to rules of issue preservation and

---

[23] *See Thomas v. District of Columbia Dep't of Emp't Servs.*, 547 A.2d 1034, 1038 (D.C. 1988) ("A governmental agency given broad authority to administer a statutory program must be accorded wide latitude in making its discretionary decisions concerning the manner in which it will enforce its program."); *Citizens Ass'n of Georgetown v. Zoning Comm'n of the District of Columbia*, 392 A.2d 1027, 1041 (D.C. 1979) ("[A]dministrative agencies should

*(continued…)*

forfeiture, a topic on which the Workers' Compensation Act and the District of Columbia Administrative Procedure Act[24] ("DCAPA") are silent.[25] Moreover, the CRB's rules do provide that it may remand a case to the ALJ for "additional findings of fact or conclusions of law,"[26] and an interpretation of that authorization allowing the Board to address new issues sua sponte and remand for the ALJ to address them would likely be a reasonable one entitled to deference.[27]

---

*(continued…)*
be free to fashion their own rules of procedure and to pursue lines of inquiry capable of permitting them to discharge their multitudinous duties.") (quoting *Vermont Yankee Nuclear Pwr. Corp. v. Nat'l Res. Def. Council*, 435 U.S. 519, 543 (1978) (internal quotation marks omitted)).

[24] *See* D.C. Code §§ 2-501 to 2-510 (2012 Repl.).

[25] *See Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004) (upholding the Attorney General's power to implement procedures to streamline appeals of immigration cases because "the [Immigration and Nationality Act] is simply silent as to what procedures should apply to [appeals]"); *Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004) (holding the same, and explaining that "an administrative agency's decisions about how to allocate its scarce resources to accomplish its complex mission traditionally has been free from judicial supervision"); *Dia v. Ashcroft*, 353 F.3d 228, 238 (3d Cir. 2003) (en banc) (same, explaining that no "provision of the INA references the procedural requirements of an administrative appeal or outlines a scheme inconsistent with the streamlining regulations"); *Yuk v. Ashcroft*, 355 F.3d 1222, 1229 (10th Cir. 2004) (same); *Albathani v. INS*, 318 F.3d 365, 377 (1st Cir. 2003) (same).

[26] 7 DCMR § 267.1 (d) (2013).

[27] Of course, the Constitution mandates that agencies provide "fair and adequate notice of administrative proceedings" such that parties "have an opportunity to defend [their] positions." *Transp. Leasing Co. v. Dep't of Emp't*
*(continued…)*

But our recognition of agency power to prescribe procedural rules has a corollary: the agency is obligated to abide by its rules.[28] The CRB, a year before it raised Brown's failure to cooperate with vocational rehabilitation as a bar to her receipt of benefits, had held that "[i]f an issue is not raised in the proceeding below, in other words, if an issue is not preserved below, the issue cannot be raised to and decided by the CRB."[29] The Board did not reconcile its action in Brown's case with that prior holding. Moreover, the Board did not explain why it raised the

---

*(continued…)*
*Servs.*, 690 A.2d 487, 489 (D.C. 1997). That right was not violated here because Brown had the opportunity to articulate her position regarding the suspension both before the ALJ on remand and before the CRB on her second appeal.

[28] *See Braddock v. Smith*, 711 A.2d 835, 840 (D.C. 1998); *Robinson v. Smith*, 683 A.2d 481, 490 (D.C. 1996); *Macauley v. District of Columbia Taxicab Comm'n*, 623 A.2d 1207, 1209 (D.C. 1993); *District of Columbia v. Konek*, 477 A.2d 730, 731 n.2 (D.C. 1984); *cf. Stearn v. Dep't of Navy*, 280 F.3d 1376, 1380-81 (Fed. Cir. 2002) (finding error where the Board of Immigration Appeals raised res judicata issue sua sponte after previously holding that the question was waived if not timely raised). Deviation from required procedures is reversible error only when the petitioner has been prejudiced by it. *Robinson*, 683 A.2d at 490-91; *Reg'l Constr. Co. v. District of Columbia Dep't of Emp't Servs.*, 600 A.2d 1077, 1079 (D.C. 1991).

[29] *Gonzalez v. UNICCO Serv. Co.*, CRB No. 08-097, 2008 DC Wrk. Comp. LEXIS 155, at *6 (D.C. Dep't of Emp't Servs. 2008) (rejecting estoppel argument presented by petitioner because it had not been raised before claims examiner) (citing *Waugh v. D.C. Dep't of Emp't Servs.*, 786 A.2d 595, 597 n.2 (D.C. 2001) (stating that "[i]n the absence of exceptional circumstances not present here, this court will not entertain a claim not raised before the agency")). In other cases, the CRB *has* considered issues not raised before the ALJ, as it did here. *See, e.g.*,

*(continued…)*

suspension-of-benefits issue despite PEPCO's failure to raise it on a cross-appeal or even to brief the issue.[30]

As we have explained, "the function of the court in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues," and "[t]he court can only perform this function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision."[31] Here, we do not know whether the CRB interpreted

_____

*(continued…)*
*Pauls-Anderson v. Whitman Walker Clinic*, CRB No. 12-051, 2012 DC Wrk. Comp. LEXIS 268, at *13-14 (D.C. Dep't of Emp't Servs. 2012).

[30] *See Jones v. District of Columbia*, 996 A.2d 834, 839 (D.C. 2010) ("[O]nce an appeal is brought, if an appellee seeks to vacate, modify, or alter the rights of parties under the judgment, it must cross-appeal or forgo review of its claim.") (alteration and citation omitted). It appears that the CRB generally, though not always, adheres to the cross-appeal rule. *See Barfield v. Curtis Equip.*, CRB No. 09-058, 2009 DC Wrk. Comp. LEXIS 302, at *4 (D.C. Dep't of Emp't Servs. 2009) (dismissing cross-appeal as untimely and accordingly refusing to consider issue raised therein); *Corbin v. Washington Hosp. Ctr.*, CRB (Dir. Dkt.) No. 05-033, 2006 DC Wrk. Comp. LEXIS 111, at *4 (D.C. Dep't of Emp't Servs. 2006) (same); *cf. Clement v. Sterne, Kessler, Goldstein & Fox*, CRB No. 10-205, 2012 DC Wrk. Comp. LEXIS 228, at *5-7 (D.C. Dep't of Emp't Servs. 2012) (treating an issue not cross-appealed in an earlier appeal as "implicitly resolved" by that appeal). *But see Rawlings v. WMATA*, CRB No. 10-038, 2011 DC Wrk. Comp. LEXIS 328, at *10-13 (D.C. Dep't of Emp't Servs. 2011) (rejecting respondent's argument on the merits despite its failure to cross-appeal).

[31] *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 902 (D.C. 1995) (quoting *Dietrich v. District of Columbia Bd. of Zoning*
*(continued…)*

its preservation rule to allow for a remand, applied a reasonable exception to the rule, ignored it inadvertently, or abandoned the rule entirely. Similarly, we do not know the CRB's rationale for raising the suspension-of-benefits issue sua sponte, and in spite of PEPCO's failure to cross-appeal.[32] On remand the Board therefore

---

*(continued…)*
*Adjustment*, 293 A.2d 470, 472 (D.C. 1972)); *see also Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 375 (1998) ("unreasoned decisionmaking . . . prevent[s] . . . effective review); *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 915 (D.C. 2009) ("[T]his court cannot affirm an administrative decision if we cannot confidently ascertain either the precise legal principles on which the agency relied or its underlying factual determinations.") (internal quotation marks omitted); *Columbia Broad. Sys., Inc. v. FCC*, 454 F.2d 1018, 1025 (D.C. Cir. 1971) ("Much of our evolving body of administrative procedure rests upon a cornerstone requirement of reasoned decision making. [] Without such a requirement, effective judicial review would be impractical if not impossible, and administrative litigants and the public generally would be set adrift on a potential sea of unconscious preference and irrelevant prejudice.").

[32] The CRB did suggest that the previous suspension of benefits for Brown's failure to cooperate with vocational rehabilitation and the previous finding that she had voluntarily limited her income "may present jurisdictional impediments" to any disability benefit awards. We have difficulty characterizing either prior determination as jurisdictional. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority."); *Gatewood v. District of Columbia Water & Sewer Auth.*, 2013 D.C. App. LEXIS 389, at *9-10 (D.C. July 3, 2013) ("Jurisdictional rules limit the universe of controversies a decisionmaker may properly consider; when faced with a jurisdictional bar, the decisionmaker has no power to consider the case. Jurisdictional rules may be raised at any point in the proceedings and are not subject to waiver, however late they are invoked. By contrast, nonjurisdictional rules and deadlines may be extended or waived.") (footnotes omitted).

should address whether it had the authority or discretion to raise the suspension-of-benefits issue.

## B. Modification of the Suspension Ruling

### 1. Applicability of the January 2007 Ruling to Brown's Current Application for Benefits

The Workers' Compensation Act "imposes reciprocal obligations on an employer and an employee in respect to vocational rehabilitation."[33] D.C. Code § 32-1507 requires employers to furnish rehabilitation services "designed, within reason, to return the employee to employment at a wage as close as possible to the wage that the employee earned at the time of injury."[34] In return, the statute provides that if "the employee unreasonably refuses . . . to accept vocational rehabilitation[,] the Mayor shall, by order, suspend the payment of further compensation, medical payments and health insurance coverage during such

---

[33] *Epstein, Becker, & Green v. District of Columbia Dep't of Emp't Servs.*, 850 A.2d 1140, 1142 (D.C. 2004).

[34] D.C. Code § 32-1507 (a) & (c). If an employer fails to provide "adequate and sufficient" rehabilitation services, the Mayor is authorized to use government funds to procure the services and then to institute proceedings against the recalcitrant employer to recover their cost. *Id.* § 32-1507 (c).

period, unless the circumstances justified the refusal."[35]  As the Board has stated, "a suspension of benefits pursuant to D.C. Code § 32-1507 (d) is only appropriate throughout the period that an injured employee unreasonably refuses to accept vocational rehabilitation and upon demonstration of a willingness to participate in the vocational rehabilitation which an employer is obliged to continue to provide, the suspension of benefits must end."[36]  Accordingly, we have stated, the suspension of benefits continues until such time as the employee begins to cooperate[37] or manifests a willingness to do so.[38]  On its face, therefore, the

---

[35]  *Id.* § 32-1507 (d); *see Black v. District of Columbia Dep't of Emp't Servs.*, 801 A.2d 983, 986 (D.C. 2002).  It is striking that the statute mandates the suspension not only of wage loss benefits (the need for which might be reduced or eliminated if the employee were to cooperate with vocational rehabilitation) but also of schedule benefits, medical payments, and health insurance coverage. (However, with respect to the obligation of employers to pay health insurance premiums for injured employees, § 32-1507 (d) has been preempted by the federal Employee Retirement Income Security Act.  *See District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 126-33 (1992).)

[36]  *Darden v. Guest Services*, CRB No. 03-115, 2007 DC Wrk. Comp. LEXIS 39, at *6-7 (D.C. Dep't of Emp't Servs. 2007); *accord Darden v. Guest Services*, CRB No. 03-115, 2005 DC Wrk. Comp. LEXIS 58, at *5 (D.C. Dep't of Emp't Servs. 2005) ("[T]his jurisdiction has consistently held that a suspension of benefits, pursuant to § 32-1507 (d) is only appropriate throughout the period that the injured employee unreasonably refuses to accept vocational rehabilitation. Upon demonstration of a willingness to participate in the vocational rehabilitation which [the employer] is obligated to continue to provide, the suspension of benefits payments must end.").

[37]  *Black v. D.C. Dep't of Emp't Servs.*, 801 A.2d 983, 986 (D.C. 2002).

January 2007 finding that Brown unreasonably refused to cooperate with vocational rehabilitation would seem to require the suspension of her benefits so long as she adheres to that refusal.[39]

In arguing that the suspension in January 2007 of her temporary total disability benefits does not apply to her current claim for permanent partial disability benefits, Brown relies on our decision in *Capitol Hill Hospital v. District of Columbia Department of Employment Services*,[40] which affirmed that a claimant did not need to modify an earlier award of temporary disability benefits to bring a claim for permanent disability benefits arising out of the same injury. This was because the statutory modification procedure in what is now D.C. Code § 32-1524 "is designed for the review of a specific compensation award covering an issue

---

*(continued…)*

[38] *Darden v. D.C. Dep't of Emp't Servs.*, 911 A.2d 410, 417 (D.C. 2006) (citing *Byrnes v. Grand Hyatt Washington*, AHD No. 03-171B, OWC No. 569630, 2005 DC Wrk. Comp. LEXIS 140 (D.C. Dep't of Emp't Servs. 2005)).

[39] Brown argues that there was no evidence that PEPCO had continued to offer her vocational rehabilitation services after her benefits were suspended, which she contends it was obligated to do by D.C. Code § 32-1507 (a). But the lack of such evidence is immaterial to the continuation of the suspension in the absence of any expression by Brown of a genuine willingness to take advantage of such services.

[40] 726 A.2d 682 (D.C. 1999).

'previously decided' by that order, and is not addressed to new issues that were not decided in the prior compensation award."[41]   The new claim in *Capitol Hill Hospital* did not require reconsideration of anything decided in connection with the earlier award; instead, it turned on a new issue—permanence—that had not been considered previously.   In the present case, however, the Board held that Brown's current claim does require reconsideration of an issue—her refusal to cooperate with vocational rehabilitation and its consequences—decided in the earlier proceeding.   Whether that is so turns on the Board's interpretation of D.C. Code § 32-1507 (d) as requiring the suspension of any and all benefits that a recalcitrant employee otherwise could receive, not just those benefits that were considered in the proceeding that resulted in the order of suspension.   This seems to us a reasonable construction of the provision at issue; it certainly does not "contravene" the statutory text.[42]   The Board's construction is consistent with the evident statutory goal of providing a powerful incentive to employees to cooperate with

---

[41]   *Id.* at 685 (quoting *Short v. D.C. Dep't of Emp't Servs.*, 723 A.2d 845, 849 (D.C. 1998)).

[42]   *Sch. St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798, 805 (D.C. 2001) (quoting *District of Columbia v. Pierce Assocs., Inc.*, 462 A.2d 1129, 1130 (D.C. 1983)).

vocational rehabilitation.[43] We conclude that the CRB's interpretation of D.C. Code § 32-1507 (d) is entitled to deference.[44]

## 2. Procedure for Ending the Suspension of Benefits

On the other hand, the Board's further conclusion—that if Brown wishes to abrogate the suspension of her benefits, her only recourse is to apply for a modification of the January 2007 order based on a change of conditions pursuant to D.C. Code § 32-1524 (a)—gives us pause. As we have said, "consistent with the Act's humanitarian purpose, that section creates an exception to principles of claim and issue preclusion and provides a procedure that enables claimants to revisit compensation awards."[45] But the exception is time-limited. The statute permits an order rejecting an employee's claim to be reopened only within one or three years,

---

[43] *See* 5 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW (hereinafter, "LARSON") § 95.04 (2013) (explaining the difficulties in giving employers and employees incentives to provide and cooperate with vocational rehabilitation).

[44] Furthermore, we see no merit to Brown's suggestion that the Board should have affirmed her award of permanent partial disability benefits even though her right to receive benefits remained in suspension.

[45] *WMATA v. District of Columbia Dep't of Emp't Servs.*, 981 A.2d 1216, 1219-20 (D.C. 2009); *see also Walden v. District of Columbia Dep't of Emp't Servs.*, 759 A.2d 186, 190 (D.C. 2000); *Short v. District of Columbia Dep't of Emp't Servs.*, 723 A.2d 845, 849-50 (D.C. 1998).

depending on whether the claim is for schedule or non-schedule benefits.[46] This seems to mean that an employee whose benefits (including medical benefits) have been suspended for failure to cooperate with vocational rehabilitation has only one or three years to lift the suspension by choosing to cooperate or showing that her continued refusal has become reasonable.[47] That limitation may be justified, but it would appear to be in tension with the proviso in D.C. Code § 32-1507 (d) that, as interpreted by the CRB, mandates that benefits be suspended only "during such period" as "the employee unreasonably refuses . . . to accept vocational

---

[46] D.C. Code § 32-1524 (a) provides:

> (a) At any time prior to 1 year after the date of the last payment of compensation or at any time prior to 1 year after the rejection of a claim, provided, however, that in the case of a claim filed pursuant to § 32-1508(a)(3)(V) the time period shall be at any time prior to 3 years after the date of the last payment of compensation or at any time prior to 3 years after the rejection of a claim, the Mayor may, upon his own initiative or upon application of a party in interest, order a review of a compensation case pursuant to the procedures provided in § 32-1520 where there is reason to believe that a change of conditions has occurred which raises issues concerning:
>     (1) The fact or the degree of disability or the amount of compensation payable pursuant thereto; or (2) The fact of eligibility or the amount of compensation payable pursuant to § 32-1509.

[47] If that is so, the time apparently has run for Brown.

rehabilitation."[48]  The harshness of the time bar on claimants who are otherwise eligible for disability benefits is also arguably out of step with the general rule that "workers' compensation statutes should be liberally construed to achieve their humanitarian purpose."[49]

This is not to say that the imposition of § 32-1524 (a)'s time limits on claimants whose benefits are suspended under § 32-1507 (d) cannot be justified. So far as we can tell, however, the Department of Employment Services has not addressed the tension between the two statutory provisions.  While the CRB has said, in this and prior cases, that a claimant seeking the reinstatement of suspended benefits must utilize the modification statute, it has never specifically acknowledged the problem created by § 32-1524 (a)'s deadlines in this context, let alone reconciled them with its understanding of § 32-1507 (d).

In accordance with our usual practice, we will not attempt to construe the statutory provisions before the agency charged with administering them has done

---

[48] D.C. Code § 32-1507 (d); *see supra* notes 36 to 38.

[49] *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 952 A.2d 168, 173 (D.C. 2008) (quoting *Vieira v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 579, 584 (D.C. 1988) (alteration omitted)); *accord Poole v. District of Columbia Dep't of Emp't Servs.*, 77 A.3d 460, 468 (D.C. 2013).

so; "we think it inadvisable for this court to attempt to review the issue on this record without a clearer exposition by the agency of its statutory analysis in light of the facts of this case and the broader considerations presented by the issue."[50] The interpretation of the suspension and modification provisions "should be made, in the first instance, by the agency."[51]  We trust that on remand, or perhaps in subsequent proceedings, the CRB will "engage in the necessary analysis of the legislation it is charged with carrying out."[52]

## IV.  Consecutive Payment of Awards

We come now to Brown's objection to the CRB's alternative holding that her awards for both schedule and non-schedule permanent partial disability benefits (assuming Brown is or becomes eligible to receive them) must be paid to her consecutively rather than concurrently.[53]  Brown does not persuade us that the

---

[50] *Gay v. District of Columbia Dep't of Emp't Servs.*, 644 A.2d 1326, 1328 (D.C. 1994).

[51] *Mushroom Transp. v. District of Columbia Dep't of Emp't Servs.*, 698 A.2d 430, 434 (D.C. 1997).

[52] *King v. District of Columbia Dep't of Emp't Servs.*, 742 A.2d 460, 466 (D.C. 1999).

[53] In light of our remand on the suspension issue, we need not reach this question.  But if Brown prevails on the suspension issue below (or otherwise

*(continued…)*

Board failed to articulate a reasoned interpretation of the Workers' Compensation Act or otherwise erred in reaching its conclusion.[54]

As the Board stated, quoting an opinion of this court and an authoritative treatise on workers' compensation law, "where concurrent injuries result from the same accident, the normal rule is that, since a person can be no more than totally disabled at a given point, he or she cannot be awarded both total permanent and permanent partial benefits for the same injurious episode, nor can that person be awarded a cumulation of partial benefits whose sum total is greater than the

_(continued…)_

becomes eligible for benefits), the CRB's consecutive payment holding would have renewed importance to the case. _See_ 13B CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FED. PRACTICE AND PROCEDURE § 3533 & n.21 (3d ed. 2008) ("Courts recognize that it may be valuable to decide alternative grounds, even though not all are necessary[.]").

[54]     PEPCO mistakenly argues that this issue is not properly before us because Brown did not immediately petition for judicial review of the CRB's remand order, in which the Board affirmed the ALJ's ruling that Brown's schedule and non-schedule benefits run consecutively but remanded the case for the ALJ to determine whether benefits were still suspended. The remand order was interlocutory and therefore, absent extraordinary circumstances not present here, unreviewable until the administrative proceedings produced a final decision. _See Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs._, 712 A.2d 1018, 1020 (D.C. 1998).

benefits for permanent total disability."[55]  The Board declared itself "persuaded by this authority."

The "normal rule" means that the combined weekly benefits for two partially disabling injuries (e.g., schedule and non-schedule disability payments) should never be higher than the weekly maximum payment for total disability.  As Larson explains, the "theoretical reason" for this rule "is that, at a given moment in time, a person can be no more than totally disabled."[56]  Otherwise stated, a partially disabled worker, who by definition remains capable of earning some wages, should not be compensated at a higher rate than a totally disabled worker who can earn nothing.  Larson adds that a "practical reason" often supports the "normal rule" as well—if the combined weekly benefits of an employee who is capable of working exceed the weekly maximum for total disability, "it may be more profitable for [the employee] to be disabled than to be well—a situation which compensation law studiously avoids in order to prevent inducement to malingering."[57]

---

[55]  *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 952 A.2d 168, 175 (D.C. 2008) (quoting LARSON § 92.01[2]; internal quotation marks, brackets, and emphasis omitted).

[56]  LARSON § 92.01[1].

[57]  *Id.*  Under the District's law, this "practical" rationale is less persuasive when the employee is receiving schedule benefits, because the employee can keep

*(continued…)*

This rule does not mean a permanently disabled employee is forbidden to receive both a schedule and a non-schedule award if the combined weekly compensation from the two awards would be higher than the weekly compensation for total disability. In the District of Columbia, as in many jurisdictions, there are durational limitations on permanent partial disability awards. D.C. Code § 32-1505 (b) provides that "[f]or any one injury causing temporary or permanent partial disability, the payment for disability benefits shall not continue for more than a total of 500 weeks."[58] D.C. Code § 32-1508 specifies lower durational limits on the payment of benefits for schedule injuries—for example, the compensation period is 234 weeks for the loss of an arm in the case of an injury occurring on or after April 16, 1999.[59] Consequently, as Larson states, "[t]he great majority of decisions have held" that when an employee has more than one permanent partial disability award, the awards can be paid consecutively—"the maximum allowances for these injuries can, so to speak, be laid end-to-end."[60]

---

*(continued…)*
receiving his or her schedule benefits after returning to work. *See Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95, 101-02 (D.C. 1988).

[58] An extension of up to 167 weeks may be granted in cases of whole body impairment exceeding twenty percent under American Medical Association guidelines. D.C. Code § 32-1505 (b).

[59] *Id.* § 32-1508 (3)(A), (V)(iii).

That is what the Board held in this case with respect to schedule and non-schedule awards for injuries deriving from a single work accident.[61] Its decision to follow what Larson calls "the normal rule" with respect to concurrent permanent partial disability awards was presaged by the conclusion the Board reached a year earlier in *Ambrose v. Howard University*.[62] In *Ambrose*, on remand from this court, the CRB considered the related question of whether a claimant may receive permanent partial schedule disability benefits simultaneously with permanent total disability benefits.[63] After considering, *inter alia*, the "absence of express statutory authority" for such concurrent payment and the lack of support for it in the relevant

---

*(continued…)*

[60] LARSON § 92.02. "This result," Larson adds, "has been reached as to almost every permutation and combination of temporary and permanent, partial and total." *Id.*

[61] Disability awards relating to injuries incurred in different work incidents are not at issue in this case and we do not address them in this opinion. They may raise more complex questions. *Cf. Stevedoring Servs. of Am. v. Price*, 382 F.3d 878, 888 (9th Cir. 2004) (holding that "when an employee's earnings have increased between the time of a prior permanent partial disability and subsequent permanent total disability, permitting him to retain the full amount of both awards does not result in any double dipping if the employee's increase in earnings [was] not caused by a change in wage-earning capacity").

[62] CRB No. 06-23(R), 2008 DC Wrk. Comp. LEXIS 365 (D.C. Dep't of Emp't Servs. 2008).

[63] The issue had been presented to this court in *Howard Univ. Hosp. v. D.C. Dep't of Emp't Servs.*, 952 A.2d 168 (D.C. 2008), on appeal from an earlier decision of the Board in the *Ambrose* proceedings. Although we expressed

*(continued…)*

legislative history,[64] precedent under the Longshoreman's and Harbor Workers' Compensation Act ("LHWCA"),[65] and "the purpose and the nature of the benefits" in question,[66] the Board held in accordance with Larson's statement of the normal

---

*(continued…)*

"considerable doubt" that an employee entitled to permanent total disability benefits could receive partial disability benefits too, we did not decide the question but instead remanded the case to the CRB with directions to reconsider it in light of the authorities cited in our opinion (which included both Larson's treatise and case law from other jurisdictions). *Id.* at 170.

[64] 2008 DC Wrk. Comp. LEXIS 364, at *14-15.

[65] Comparing the District of Columbia Workers' Compensation Act to its federal precursor, the CRB found it persuasive that "the virtually indistinguishable provisions" of the LHWCA "ha[d] been interpreted to exclude schedule awards where there exists a compensation award for permanent total disability." *Id.* at *18-19. The Board found precedent from other jurisdictions less relevant because of differences in the pertinent statutory language.

[66] *Id.* at *20. As the CRB explained, payment of schedule benefits along with permanent total disability benefits would be contrary to the policy of the Workers' Compensation Act:

> A schedule award is intended to compensate for economic, not physical, impairment by providing advance payment for future wage loss anticipated to result from a work-related injury irrespective of any wage loss actually incurred. . . . However, where an injured employee is found to be totally and permanently disabled, the question of the impact of the employee's injury upon future earnings potential has been conclusively resolved. Payment of a permanent partial disability schedule award in addition to permanent total disability benefits based on actual wage loss not only fails to further the intended purpose underlying the

*(continued…)*

rule that "an injured worker is not entitled to receive permanent partial disability benefits . . . concurrently with the award of permanent total disability benefits."[67]

The considerations on which the CRB relied in *Ambrose* support its holding in the present case. First, the Workers' Compensation Act does not provide that permanent partial disability benefits must be paid concurrently if they would exceed the benefits payable for total disability.[68] To the contrary, the Act strongly

---

*(continued…)*

provision of schedule awards, the concurrent payment of both actually undermines the overriding purpose and intent of the Act . . . of providing compensation for actual wages lost.

*Id.* at *20-21 (citing *Smith v. D.C. Dep't of Emp't Servs.*, 548 A.2d 95, 100-102 (D.C. 1988)).

[67] *Id.* at *21.

[68] D.C. Code § 32-1508 (3) provides that permanent partial disability compensation "shall be in addition to compensation for temporary total disability or temporary partial disability." The CRB has construed this to mean that "permanent partial schedule benefits may be paid concurrently with payments of *temporary* total disability or *temporary* partial disability benefits." *Ambrose*, 2008 D.C. Wrk. Comp. LEXIS 365, at *12-13 (emphasis added). Under the interpretive canon "*expressio unius est exclusio alterius*," the CRB took the omission of a comparable provision for payment of permanent partial disability benefits in addition to *permanent* total disability benefits as a sign that the legislature did not intend to permit such payments. *Id.* at *13-14; *see also Howard Univ. Hosp.*, 952 A.2d at 174. The same argument might be made with respect to the concurrent payment of schedule and non-schedule permanent partial disability benefits; *but see infra* footnote 72. It is true that, in *Morrison v. District of Columbia Department of Employment Services*, 736 A.2d 223, 226 (D.C. 1999), we held that

*(continued…)*

implies that a combination of even the most serious injuries may at most entitle an employee to receive permanent total disability compensation.[69] Moreover, the Act specifically provides that any multiple schedule awards the claimant receives "shall run consecutively."[70] Consecutive payment is necessary to avoid paying the partially disabled employee more per week than if the employee were totally disabled, because the weekly compensation payable under a single schedule award, 66 2/3% of the employee's average weekly wages, is the same as it is under a total disability award.[71] Brown does not dispute that her benefits for her different schedule injuries must be paid consecutively in accordance with D.C. Code § 32-1508 (3)(U); she argues only that her non-schedule benefits should be paid

---

*(continued…)*
"when a petitioner suffers multiple disabilities from a single injury, that petitioner is entitled to both schedule and non-schedule benefits, subject to proof that the non-schedule disability led to wage loss." *Morrison* did not consider, however, whether such payments must be paid consecutively rather than concurrently in order to avoid paying a partially disabled employee more than a totally disabled one in the same circumstances.

[69] *See* D.C. Code § 32-1508 (1) ("Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any 2 thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined only if, as a result of the injury, the employee is unable to earn any wages in the same or other employment[.]").

[70] *Id.* § 32-1508 (3)(U).

[71] *Id.* § 32-1508 (1), (3).

alongside them. Although the Act does not specify how to pay a permanently partially disabled employee who, like Brown, has been awarded both schedule and non-schedule benefits, the logic of the Act dictates that those awards also should "run consecutively" if concurrent payment would overcompensate the employee compared to one who is totally disabled.[72] "It makes little sense . . . to compel [the employer] to pay compensation at a greater rate for a less serious occurrence."[73]

The essentially identical provisions of the LHWCA have been held to preclude concurrent payments in this situation.[74] The purpose and nature of the benefits in question likewise support the CRB's decision. As this court said in *Smith*, schedule benefits for permanent partial disability are "intended to

---

[72] An *expressio unius* argument could be made to the contrary; i.e., because § 32-1508 (3)(U) requires consecutive payment only of multiple schedule awards, the legislature implicitly must have chosen not to require consecutive payment of schedule and non-schedule awards, and hence must have meant to permit concurrent payment of them. But for all the reasons set forth above, this argument strikes us as implausible. What purpose could the legislature have had for making such a distinction, and for doing so *sub silentio*?

[73] *Ito Corp. v. Green*, 185 F.3d 239, 243 (4th Cir. 1999).

[74] *See id.* ("In no case should the rate of compensation for a partial disability, or combination of partial disabilities, exceed that payable to the claimant in the event of total disability. To hold otherwise would be to conclude that the whole may be less than the sum of its parts, and we are fairly certain that— although our authority extends to a myriad of matters—we are without jurisdiction to repeal the laws of mathematics.").

compensate only for economic, not physical impairment"; although a schedule award is "payable regardless of actual wage loss, . . . 'the schedule was never intended to be a departure from or an exception to the wage-loss principle.'"[75] It would constitute such a departure to pay schedule benefits concurrently with other permanent wage loss benefits—whether those other benefits are for total disability as in *Ambrose* or a partial disability as in this case—if the combined payments would be more than what the employee could receive even if she were totally disabled.

In sum, the CRB has articulated a reasoned and reasonable interpretation of the Act. Brown has advanced no countervailing argument in favor of concurrent payment, nor has she identified any pertinent factor that the Board neglected to consider. We therefore defer to the Board's interpretation.

## V. Conclusion

For the foregoing reasons, we vacate the decision of the CRB holding that any further payment of disability benefits to Brown is suspended until such time as

---

[75] *Smith*, 548 A.2d at 101 (quoting 2 A. LARSON, WORKMEN'S COMPENSATION LAW § 57.14 (c) (1987)).

the January 18, 2007 compensation order finding that she failed to cooperate with vocational rehabilitation is modified pursuant to D.C. Code § 32-1524. We remand this case to the CRB for it to address its authority to raise the suspension issue sua sponte and the applicability of the modification statute and its time limits to the 2007 suspension order. We uphold the CRB's contingent ruling that the awards for permanent partial disability schedule benefits and for permanent partial wage loss benefits are payable consecutively.

*So ordered.*