*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-1295

CONSTANCE WARE, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT.

Petition for Review of a Decision of the Compensation Review Board
of the District of Columbia Department of Employment Services
(CRB-98-14 and CRB-143-15)

(Argued February 15, 2017                    Decided April 13, 2017)

*Harold L. Levi*, with whom *Robert P. Newman* was on the brief, for petitioner.

*Mary L. Wilson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent.

Before GLICKMAN and FISHER, *Associate Judges*, and WASHINGTON, *Senior Judge*.[*]

FISHER, *Associate Judge*: Petitioner Constance Ware challenges orders of

the Compensation Review Board ("CRB") in two separate, but similar,

---

[*]  Judge Washington was Chief Judge at the time of argument. His status changed to Senior Judge on March 20, 2017.

proceedings. In CRB No. 14-098 ("the first proceeding"), the CRB denied the request of petitioner's counsel for attorney's fees incurred during petitioner's successful attempt to have her disability benefits and medical benefits reinstated. In CRB No. 15-143 ("the second proceeding"), the CRB vacated an order of the Office of Hearings and Adjudication ("OHA") that awarded attorney's fees to petitioner's counsel for other work done in the same matter.

The issue was complicated by the fact that the statute authorizing an award of attorney's fees was repealed from September 24, 2010, to September 14, 2011 ("the gap period"). To address cases in which a portion of the proceedings had taken place during the gap period, the CRB had developed a test focusing on the date of the "necessary first event." *See Dixon-Cherry v. District of Columbia Pub. Sch.*, CRB No. 12-138 (A), 2013 WL 494505, at \*2 (Jan. 23, 2013); *cf. Rice v. District of Columbia Dep't of Motor Vehicles*, CRB No. 08-027, 2007 WL 4712897, at \*4 (Dec. 20, 2007). If the necessary first event took place during the gap period, petitioner's counsel would not be entitled to fees. *Dixon-Cherry*, CRB No. 12-138 (A), 2013 WL 494505, at \*2.

Petitioner argues that the CRB wrongly concluded that the "notice of intent" to terminate petitioner's benefits ("NOI") was the necessary first event; that there

is no substantial evidence that the NOI was issued on August 30, 2011, as the CRB claims; and that the CRB improperly raised an issue *sua sponte* in order to reject her request for fees. We agree that the CRB erred in concluding that the NOI was the necessary first event, and we reverse and remand on those grounds. We need not reach petitioner's arguments regarding the date when the NOI was issued[1] and the actions the CRB took *sua sponte*. However, we also hold that only the CRB's order in the second proceeding is properly before us, and thus we remand for further proceedings in that matter only.

## I.  Background

In 1991 petitioner suffered a recurrence of a work-related injury that occurred while she was employed by the District of Columbia Department of Corrections (the "Employer"). She received disability benefits until 2011. On August 30 of that year, the Public Sector Workers' Compensation Program ("PSWCP") issued an NOI that stated: "[W]e conclude you are no longer eligible for workers' compensation benefits. Payments will be terminated on September 30, 2011." The NOI was sent to begin the process outlined in

---

[1] For purposes of this opinion, we will assume without deciding that the NOI was issued on August 30, 2011.

D.C. Code § 1-623.24 (d)(1) (2012 Repl.). In order to modify a compensation award, the Mayor must first "provide written notice to the claimant of the proposed modification[.]" *Id.* § 1-623.24 (d)(1)(A).

The NOI also informed petitioner that she could either "request[] reconsideration" by the PSWCP or "appeal[]" to OHA. An attached form warned petitioner that she would have thirty days to exercise either option. The reconsideration option corresponded to a statutory requirement that the "claimant shall have at least 30 days to provide the Mayor with written information as to why the proposed modification is not justified[.]" *Id.* § 1-623.24 (d)(1)(B). The appeal option seemed to draw upon a different statutory provision giving a claimant thirty days to appeal to the OHA if he or she "is not satisfied with a decision" regarding modification. *Id.* § 1-623.24 (f).

Petitioner chose the reconsideration option. However, she did not make her request within thirty days, and the PSWCP therefore terminated petitioner's benefits on September 30, 2011. *See id.* § 1-623.24 (d)(3). Petitioner protested that she had not received the NOI in a timely fashion. After extensive litigation before the PSWCP, the OHA, and the CRB on both the timeliness issue and the merits, the CRB held that failure to give adequate notice tolled the thirty-day

period for requesting reconsideration and that petitioner was entitled to reinstatement of her disability and medical benefits. Employer sought review by this court, but it later voluntarily withdrew its appeal. Petitioner thus had successfully prosecuted her claim.[2]

Petitioner's counsel filed two petitions for attorney's fees. Since September 14, 2011, the District of Columbia has provided by statute that a claimant shall recover "a reasonable attorney's fee, not to exceed 20% of the actual benefit secured," if the claimant "utilizes the services of an attorney-at-law in the successful prosecution of his or her claim under § 1-623.24(b) or before any court for review of any action, award, order, or decision[.]" *Id.* § 1-623.27 (b)(2). That provision was also in place from March 8, 2007, until September 24, 2010. *See* D.C. Law 16-231 § 2 (c), 54 D.C. Reg. 365-66 (Jan. 19, 2007). However—and importantly for purposes of this case—on September 24, 2010, the Council of the District of Columbia repealed the original statute authorizing fee awards. *See* D.C. Law 18-223 § 1062 (b)(15), 57 D.C. Reg. 6258-59 (July 23, 2010). Thus, from September 24, 2010, to September 14, 2011—the gap period—there was no entitlement to attorney's fees if a claimant successfully prosecuted his or her claim.

---

[2] *See* D.C. Code § 1-623.27 (b)(1) (2012 Repl.) (defining "successful prosecution" to "include a reinstatement or partial reinstatement of benefits which are reduced or terminated").

In this case, the petition in the first proceeding requested attorney's fees for counsel's work before the CRB and in preparing for the incipient appeal before this court. The petition in the second proceeding requested attorney's fees for work that appears to have been mostly performed before the OHA.

The CRB ruled on the first petition on September 23, 2015. Because the NOI in this case was issued on August 30, 2011, during the gap period, the CRB reasoned that it could not award attorney's fees. Petitioner twice moved for reconsideration, but the CRB denied both motions. The last of these denials occurred on October 28, 2015.

The CRB ruled on the second petition on November 23, 2015, vacating an OHA decision that petitioner was entitled to attorney's fees for work done before the OHA. On December 1, 2015, petitioner filed a petition for review by this court in which she purported to challenge the CRB's rulings in both proceedings.

## II.  Analysis

### A.  Timeliness of Appeal

As an initial matter, respondent argues that the decisions made by the CRB in the first proceeding are not properly before us. Respondent points to D.C. App. R. 15 (a)(2), which requires that a petition for review of an agency decision "be filed within 30 days after notice is given," with "5 additional days" allowed if notice is by mail. Respondent emphasizes that the September 23, 2015, decision of the CRB does not fall within this time period and argues that petitioner did not successfully toll the time for seeking review by filing her motions for reconsideration. Respondent concedes that the CRB's decision in the second proceeding is properly before us because it was issued November 23, 2015, and the petition for review was filed on December 1, 2015.

We agree with respondent that, given the number of motions for reconsideration that petitioner filed and the dates of the CRB's decisions on those motions, petitioner did not sufficiently toll the time for seeking review of the CRB's decisions in the first proceeding. The relevant dates in that proceeding are: on September 23, 2015, the CRB denied petitioner's fee petition. On October 8, 2015, the CRB denied petitioner's first motion for reconsideration. The CRB denied petitioner's second motion for reconsideration on October 28, 2015. On December 1, 2015, petitioner filed a petition for review by this court.

Because notice of the October 28 CRB decision was given by mail, petitioner would have timely sought review, if it were an appealable order.[3] However, the dates of the other two decisions—September 23 and October 8—are well beyond the thirty-plus-five-day period for seeking review by this court. Those decisions are properly before us only if petitioner's second motion for reconsideration continued to toll the time for filing a petition for review. We hold that it did not.

It is true that "[i]f a party timely files a petition for rehearing or reconsideration in accordance with the rules of the agency, the time to petition for review [by this court] runs from the date when notice of the order denying the petition is given." D.C. App. R. 15 (b). By referring to "*a* petition," the rule seems to allow only one motion for reconsideration to toll the time for appeal. *Id.* However, we need not rely solely on such a close parsing of the rule. There are

---

[3] In the past, we have stated that "we do not have jurisdiction to hear appeals from denials of motions for reconsideration[.]" *Totz v. District of Columbia Rental Hous. Comm'n*, 474 A.2d 827, 828 (D.C. 1984). However, we have more recently clarified that "if a Motion for Reconsideration has tolled the timing requirements for an appealable order, and an appeal is timely noted following the denial of the Motion for Reconsideration, both the appealable order and the Motion for Reconsideration may be reviewed." *Puckrein v. Jenkins*, 884 A.2d 46, 53 n.8 (D.C. 2005). As discussed below, the filing of the second motion for reconsideration did not toll the time for filing a petition for review.

sound policies behind permitting only one motion for reconsideration to extend the time for seeking review. Otherwise, a party could defeat the purpose of setting time limits for seeking appellate review by repeatedly filing motions for reconsideration. *See, e.g.*, *Yates v. Behrend*, 280 F.2d 64, 65 (D.C. Cir. 1960) (holding that a second motion for reconsideration did not toll the time for appeal because to hold otherwise "would permit dilatory tactics destructive of the finality of the judgment"); *De Foe v. Nat'l Capital Bank*, 90 A.2d 242, 243 (D.C. 1952) ("A party should not be allowed to indefinitely extend the time for appeal by the filing of successive motions."). The same logic applies to agency cases. *See Peabody Coal Co. v. Abner*, 118 F.3d 1106, 1108 (6th Cir. 1997) (holding that a second motion for reconsideration of an agency decision regarding disability benefits did not toll the time for appeal; "[t]he time limit would be a joke if parties could continually file new motions, preventing the judgment from becoming final" (quoting *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986))).[4]

---

[4] We also decline to equitably toll the time for seeking review. *See Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1103 (D.C. 2015) (holding that Rule 15 (a)(2) is subject to equitable tolling). Equitable tolling should only be granted under "extraordinary circumstances[.]" *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007); *see also Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) ("only in extraordinary and carefully circumscribed circumstances"). Petitioner does not develop any fact-specific argument as to why she should receive this unusual benefit.

Accordingly, the CRB's decisions in the first proceeding are not properly before us. We now turn to petitioner's challenge to the decision in the second proceeding.

## B. The CRB's Identification of the "Necessary First Event"

We defer to an agency's decision "unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 882, 885 (D.C. 2003). Although we "must give weight to any reasonable construction of a regulatory statute that has been adopted by the agency charged with its enforcement," we will not sustain the agency's interpretation if it "is plainly wrong or inconsistent with the statute[.]" *Nat'l Geographic Soc'y v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 618, 620 (D.C. 1998) (internal quotation marks omitted).

Petitioner argues that the CRB erred when it concluded that the NOI was the necessary first event. That conclusion led to the denial of attorney's fees because the NOI was issued during the gap period. Petitioner argues that the necessary first event must be found by identifying the decision to deny or terminate benefits and

that the NOI cannot be a "decision to terminate" because it legally is only a proposal to terminate benefits.[5]

The District responds that the NOI *is* a decision to terminate. It points, for instance, to the language quoted above which announces that petitioner is "no longer eligible" for benefits. Moreover, the NOI refers to a "New Decision." It also states that a claimant has the option of "requesting reconsideration" from the PSWCP and may appeal to OHA if the reconsideration process "does not change [the PSWCP's] decision[.]"

This case was not the first time the CRB had addressed such issues. *Rice v. District of Columbia Dep't of Motor Vehicles*, CRB No. 08-027, 2007 WL 4712897 (Dec. 20, 2007) arose from the termination of benefits previously awarded. The Compensation Order reinstating those benefits was issued on the

---

[5] Petitioner does not appear to challenge the CRB's use of a "necessary first event" framework to determine whether attorney's fees are authorized in a particular case. In any event, we do not think that the CRB's use of such a framework is unreasonable given the statute's silence as to how to address cases in which there has been a "successful prosecution" that includes proceedings during the gap period. *See* D.C. Code § 1-623.27 (b) (2012 Repl.); *Dupree v. District of Columbia Office of Emp. Appeals*, 36 A.3d 826, 834 (D.C. 2011) (noting that we "defer to the agency's interpretation" when "a statute is silent with respect to a specific issue"). The issue here is whether the "necessary first event" has been properly identified.

same day the original statute authorizing attorney's fees became effective. *Id.* at *1. When the petitioner requested that attorney's fees be assessed against the respondent, the CRB considered whether the statute could be applied retroactively. *Id.* at *1-2. Holding that it could not, *Rice* adopted a test for avoiding retroactive application. *Id.* at *2-4. "[I]n order for there to have been a 'successful prosecution' . . . , there must first have been a denial of benefits outright, or an initial award followed by a reduction or termination thereof, which is in fact the case before us." *Id.* at *4.

*Rice* reasoned that "[s]uch a decision to terminate Petitioner's benefits was the necessary first event which led to the adjudication that was ultimately successfully prosecuted." *Id.* *Rice* specifically held that the attorney's fee statute "shall have applicability only to cases in which the termination or reduction decision, or the initial determination or award which is successfully challenged for inadequacy, occurs on or after . . . the effective date of the legislation." *Id.* at *5. Thus, *Rice* established that in order to determine whether a claimant's counsel would be entitled to attorney's fees, one had to (1) identify the necessary first event—which *Rice* equated with a decision to deny or terminate benefits—and then (2) compare that date to the effective date of the attorney's fees legislation.

The CRB also confronted the issue in *Dixon-Cherry v. District of Columbia Pub. Sch.*, CRB No. 12-138 (A), 2013 WL 494505 (Jan. 23, 2013), which involved a claim for attorney's fees after a social worker had successfully challenged an initial denial of benefits. *Id.* at *1. During its analysis, the CRB cited *Rice* and reiterated that "a decision to terminate" or deny benefits was "the necessary first event[.]" *Id.* at *2. The CRB denied attorney's fees in that case because the government had issued the notice of determination (a denial of benefits) during the gap period. *Id.*

We find no reason to fault the decisions in *Rice* and *Dixon-Cherry*. In later cases, however, the CRB seemed to depart from (or misapply) those holdings. In *Abbott v. District of Columbia Pub. Sch.*, CRB No. 13-130, 2014 WL 8843356 (Feb. 10, 2014), which involved a termination of benefits, the CRB quoted the passage from *Dixon-Cherry* that contained the "decision to terminate" language, but it identified the NOI in *Abbott* as "the necessary first event[] that led to the present adjudication[.]" *Id.* at *2. The CRB did not analyze whether the NOI actually did (or lawfully could) terminate benefits. *Id.* at *1-2. Nor did it acknowledge that it was operating under a different statutory framework than *Dixon-Cherry*. *See* D.C. Code § 1-623.24 (a) (2012 Repl.). Nevertheless, the misapplication of *Rice* and *Dixon-Cherry* had no real impact in *Abbott* because the

termination of benefits also occurred during the gap period. *See Abbott*, CRB No. 13-130, 2014 WL 8843356, at *1.

When the CRB was faced with a similar situation in this case, it simply relied on *Abbott*. Because *Abbott* had held that the NOI was the necessary first event, the CRB reasoned that the NOI must be the necessary first event in this case as well. However, it does not appear that the CRB analyzed whether the NOI in this case (or in *Abbott*) was in fact a decision to terminate or considered whether procedural and factual differences among *Rice*, *Dixon-Cherry*, *Abbott*, and this case made a difference.

Treating the NOI as a decision to terminate is inconsistent with the governing statute. The NOI is properly issued as a "proposed modification" of benefits rather than a decision to terminate. *See* D.C. Code § 1-623.24 (d)(1)(A) (2012 Repl.). Indeed, the Mayor could not actually terminate benefits until the later of (1) the expiration of the thirty-day period for claimant to "provide . . . written information as to why the proposed modification is not justified" or (2), if the claimant did respond, the completion of the statutorily required process of

reviewing the claimant's submission and then determining that benefits should in fact be terminated. *See id.* § 1-623.24 (d)(1)-(3).[6]

In sum, *Abbott* purported to rely on prior cases that addressed this issue, but it lost sight of their holdings that the "decision to terminate" was the "necessary first event." *See Abbott*, CRB No. 13-130, 2014 WL 8843356, at *2. That departure was critical for purposes of this case because the CRB followed the holding of *Abbott* without considering whether the NOI could be the "decision to terminate" consistently with the governing statutory scheme.

The District suggests alternatively that the decision in this case "evolved from" and "flow[s] logically from" those in *Rice*, *Dixon-Cherry*, and *Abbott*. It urges us to treat the point at which the case "began" or "originated" as "the necessary first event." The Notice of Intent fits neatly within this construct, but this is a different test than the one adopted by the CRB in *Rice* and *Dixon-Cherry*. We are not willing to assume that the CRB intended to alter its test without a clear explanation that it was doing so. *See Springer v. District of Columbia Dep't of Emp't Servs.*, 743 A.2d 1213, 1221 (D.C. 1999) ("[W]hen an agency departs from

---

[6] The statute contains exceptions to this rule not applicable here or, apparently, in *Abbott*. *See* D.C. Code § 1-623.24 (d)(3)(A)-(E) (2012 Repl.).

its prior practice or rule, it must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." (internal quotation marks omitted)).

### III. Conclusion

We therefore hold that the CRB's order cannot stand because it is inconsistent with D.C. Code § 1-623.24 (d) (2012 Repl.) and with the CRB's own decisions in *Rice* and *Dixon-Cherry*.[7]  *See, e.g.*, *Nat'l Geographic*, 721 A.2d at 620 (we will not sustain an agency interpretation that "is plainly wrong or inconsistent with the statute").  We reverse the decision of the CRB in the second proceeding (CRB No. 15-143) and remand for further proceedings not inconsistent with this opinion.

*So ordered*.

---

[7]  Because we hold that the NOI was not a decision to terminate, we need not reach petitioner's argument that it was not in fact issued on August 30.  Further, even though petitioner raises an important concern regarding the CRB's authority to raise issues *sua sponte*, *see Brown v. District of Columbia Dep't of Emp't Servs.*, 83 A.3d 739, 746 (D.C. 2014), we do not need to examine this argument because any prejudice that petitioner suffered from the CRB's *sua sponte* analysis is remedied by our reversal.