*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-TX-1321

ACCENTURE SUB, INC., APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CVT-11-15)

(Hon. Gerald I. Fisher, Trial Judge)

(Argued June 9, 2020       Decided September 29, 2022)

*Stephanie A. Lipinski Galland* for appellant.

*Loren L. AliKhan*, Solicitor General at the time of argument, with whom *Karl A. Racine*, Attorney General, *Carl J. Schifferle*, Acting Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General at the time of argument, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and THOMPSON,[*] *Senior Judge*.

BECKWITH, *Associate Judge*: Accenture Sub, Inc., a Delaware corporation,

---

[*] Judge Thompson was an Associate Judge at the time of argument. Her status changed to Senior Judge on February 18, 2022.

challenges a ruling of the Superior Court denying its request for a refund of corporate franchise taxes on cross-motions for summary judgment.[1]  Because we conclude that Accenture did not timely appeal, we do not reach its various substantive challenges to the ruling, and we dismiss the appeal.

**I.**

Believing it had overpaid income and franchise taxes to the District by more than six million dollars between 2004 and 2009, Accenture requested a refund from the D.C. Office of Tax and Revenue (OTR).  When OTR denied the refund request, Accenture filed this action in the Superior Court's Tax Division seeking review of that denial.  After engaging in discovery, the parties filed cross-motions for summary judgment.

At a January 2018 status hearing, the trial court announced that while it had "been [its] hope to get a written order out, . . . [it] ha[dn't] completed that" but was "ready to rule and announce [its] ruling [on the cross-motions for summary judgment], and then just supplement it when [it was] able to complete the written

---

[1] Accenture Sub is one of multiple entities within the "worldwide enterprise generally known as Accenture."  The requested refund involved taxes on income from Accenture LLP, which was Accenture Inc.'s primary operating company in the United States.  During the time at issue, Accenture LLP was largely owned by Accenture LLC, which was owned entirely by Accenture Sub.  For purposes of this opinion, "Accenture" refers to Accenture Sub.

order." The court stated that the "short answer" to the question before it—whether Accenture was entitled to a refund for the 2004–2009 fiscal years—was that Accenture was obligated to pay the taxes in question, meaning that it was not entitled to a refund and that the District's motion for summary judgment would be granted and Accenture's denied. The court described its reasons for that ruling—which were "very dependent" on the organizational structure and history of the corporate entity,[2] as well as the history of its treatment by the District for tax purposes—over the course of eight transcript pages. It noted at the outset, however, that it would "try to be, perhaps, a little bit more comprehensive in the final written order." After the court recounted the reasons for its decision, counsel for the District asked, "Your Honor, just, procedurally, will give a written order which you consider the final order, correct?" The court responded:

> I will probably just issue . . . for now a short written order that grants the one motion, denies the other, and then I'll state that for the reasons stated in open Court, and then I'm going to try to complete this, what I would call memorandum in support of my order, to try to get something in writing, but it's just been difficult to find the time and get it completely articulated.

The following day, the court entered an order denying Accenture's motion for summary judgment and granting the District's, stating that it had

---

[2] See *supra* note 1.

> concluded, for the reasons stated in open court at the hearing held January 22, 2018, that Petitioner Accenture Sub Inc. is subject to the District of Columbia's corporate franchise tax on its distributive share of the income it receives from Accenture LLP, and that there is no statutory or constitutional barrier to the District of Columbia collecting that tax . . . .

The court included a footnote at the end of the order providing that "It is this Court's intention to more fully elaborate on the reasons for its decision in a written memorandum to be issued in the near future."

No such memorandum issued. In November 2018, the parties contacted chambers to inquire about the status of the memorandum and were informed that there would not be one. Just over three weeks later, Accenture moved for "confirmation that no further merits ruling is forthcoming" and entry of judgment pursuant to Super. Ct. Tax R. 14(a). That rule provides that "[w]hen the Court has entered its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency, overpayment or underpayment." The rule provides procedures for the entry of judgment in the event of agreement or nonagreement between the parties as to the computations. If the parties agree on the "amount of the deficiency, overpayment or underpayment to be entered as the decision pursuant to the Court's findings and conclusions"—which Accenture represented that the parties did here,

agreeing on an overpayment amount of "$0"—one or both "shall file promptly with the Deputy Clerk for the Tax Division a proposed judgment evidencing their agreement." Super. Ct. Tax R. 14(a). Accenture argued in the memorandum in support of its motion that Tax Rule 14(a)'s direction to "file promptly" was met because the rule provides that a judgment should be proposed "pursuant to the Court's findings and conclusions." And while the trial court "briefly stated its findings and conclusions from the bench," it also "indicated . . . its intention to elaborate further in a memorandum opinion." This made it reasonable, Accenture contended, "for the parties to delay proposing a final judgment pending the issuance of such a memorandum."

The District opposed the motion for entry of judgment, asserting that Tax Rule 14 did not apply. It argued that the rule did not require entry of a separate judgment, both because the rule's "may withhold" language is permissive and because there was no computation required given the trial court's determination that Accenture was not entitled to a refund.

The trial court held a hearing in February 2019. It noted that it may have misled the parties by expressing its intention to issue a memorandum in support of its ruling. It stated that "almost as a matter of equity, [it thought it] ought to give Accenture an ability to appeal from [the] decision" given that it had not told

Accenture that the January 2018 order was the one it needed to appeal. It also indicated its agreement with Accenture that Tax Rule 14 operates like Civil Rule 58, requiring a separate order of judgment with a "date and a finite amount" of the overpayment or underpayment, even if that amount is zero. The court accordingly granted Accenture's motion and directed the clerk to enter judgment that Accenture overpaid $0.00.

Accenture first filed a notice of appeal to this court on December 13, 2018, 30 days after learning that there would be no further memorandum. It noted an appeal from the January 23, 2018, order—the brief order issued and entered on the docket the day after the trial court ruled on the summary judgment motions from the bench—but noted that it was doing so "out of an abundance of caution and without waiver of [its] position that [Super. Ct. Tax R. 14] requires the Court to enter judgment." This court issued an order of show cause why the appeal should not be dismissed as untimely filed. Accenture responded, arguing that the time to appeal had not started to run because the Superior Court had not entered judgment as Tax Rule 14 requires and, in the alternative, that an equitable exception to the filing deadline applied. After the trial court entered its January 2019 judgment, Accenture amended its notice of appeal to include notice that, in addition to appealing from the January 23, 2018, order, it was appealing from (1) the order directing entry of judgment that it overpaid $0.00, entered on the docket on

February 8, 2019, and (2) the February 11, 2019, docket entry stating, "Final Judgment is Petitioner Paid $0.00." This court subsequently discharged the show-cause order.

## II.

Unless otherwise specified, "[t]he notice of appeal in a civil case must be filed with the Clerk of the Superior Court within 30 days after entry of the judgment or order from which the appeal is taken." D.C. App. R. 4(a). Rule 4(a) is a mandatory claim-processing rule, which the District has "properly invoked" in this case. *Deloatch v. Sessoms-Deloatch*, 229 A.3d 486, 493 (D.C. 2020). Thus, barring application of any equitable exceptions, we may not consider the merits of this challenge if Accenture failed to file a notice of appeal within the time set forth in Rule 4(a).[3] *See id.* at 493 n.12.

---

[3] This is true notwithstanding that a motions panel of this court discharged the show-cause order directed to the timeliness of this appeal. *Cf. Bank of Am., N.A. v. District of Columbia*, 80 A.3d 650, 659 (D.C. 2013) (addressing a jurisdictional question raised in a since-vacated show-cause order because "this court must be satisfied that it has jurisdiction"); *In re J.A.P.*, 749 A.2d 715, 717 (D.C. 2000) ("[E]ven when a motions division of this court has [entered an order allowing an interlocutory appeal], . . . the division assigned to decide the merits is not bound by that order if, after briefing and further consideration, it concludes that the standards governing appeal under the statute are not satisfied.").

**A.**

The parties disagree about which Superior Court order here started the clock for Accenture to file its notice of appeal. Accenture argues that it was the February 2019 ruling because no "judgment" under Tax Rule 14 was entered until that point. The District argues that Accenture's appeal had to be taken from the January 2018 order, which it contends was "entered in compliance with the rules of the Superior Court['s]" Tax Division, D.C. App. R. 4(a)(6), resolved all of the issues in the case, and disposed of all of the pending motions. The parties' dispute largely comes down to the applicability of Tax Rule 14. We need not determine the precise scope or construction of that rule except to say that it could not be invoked here to restart Accenture's appeal window well after the court issued an order that resolved all issues in the case and left no doubt as to the computation of any taxes due.

We agree with the District that Tax Rule 14 does not always mandate entry of a separate document setting forth a specific dollar-figure judgment. The rule permits, but does not require, the Tax Division to "withhold entry of its decision" to allow the parties to "submit computations . . . showing the correct amount of the

deficiency, overpayment or underpayment . . . to be entered as the decision."[4]

Super. Ct. Tax R. 14(a). The rule does not speak to the procedure that applies if the court does not "withhold entry of its decision" and does not state that the court must enter a dollar-figure judgment in a separate document in those circumstances as Accenture has suggested.[5] Thus, for a decision of the Tax Division to be

---

[4] Tax Rule 14 closely resembles Rule 155 of the federal court tax rules. Accordingly, we "look to cases interpreting the federal rule for guidance." *Patterson v. Sharek*, 924 A.2d 1005, 1009–10 (D.C. 2007). Authorities interpreting the federal rule show both that it is discretionary and that it is employed in cases in which "the dollar amounts of deficiencies and/or overpayments . . . cannot readily be determined." *Cloes v. Comm'r of Internal Revenue*, 79 T.C. 933, 935 (1982); *see also* Jose Leiman, *Navigating the Treacherous Waters of Tax Court Rule 155*, 49 Tax Law. 165, 166 (1995) (noting that there are generally "two situations in which the court *may enter its decision directly, rather than under Rule 155*[:] . . . when the court finds entirely in favor of the [Internal Revenue] Service (sustaining the amount asserted in the notice of deficiency) or entirely in favor of a taxpayer who was not asserting an overpayment (entering a finding of no deficiency)," and that "[w]hen the court chooses to withhold the entry of its decision, the opinion filed" will include a notation that the decision "will be entered under Rule 155" (emphasis added)).

[5] Accenture argued in its response to the show-cause order that Tax Rule 14 fills the role of Civil Rule 58 in the tax context by requiring judgment to be set out on a separate document and thus clarifying the appeal deadline. Even if the written order here would not satisfy Rule 58, *but see, e.g.*, *Kidd v. District of Columbia*, 206 F.3d 35 (D.C. Cir. 2000), Rule 58 is not applicable to actions brought in the Tax Division. *See* Super. Ct. Tax R. 3(a). Other state courts have found that the omission of separate-document requirements in rules governing tax proceedings is not accidental, as such proceedings involve review of agency decisions and often have a "clearly ascertainable" final decision, unlike some complex civil matters. *Lewis v. Kawafuchi*, 116 P.3d 711, 715–16 (Haw. Ct. App. 2005); *accord Alford v. City & Cnty. of Honolulu*, 122 P.3d 809, 816–18 (Haw. 2005). We note that no separate-document requirement applies in proceedings for review of those

"entered for purposes of [Rule 4(a)]" so as to start the appeal clock, D.C. App. R. 4(a)(6), it must be entered on the docket, Super. Ct. Civ. R. 79; *see also* Super. Ct. Tax R. 3(a) (making Super. Ct. Civ. R. 79 applicable to actions in the Tax Division), but need not in all cases be a separate judgment under Tax Rule 14.

In this case, there are no indications that the trial court did in fact "withhold entry of its decision" so that the parties could submit computations. Because the trial court granted the District's motion for summary judgment and found that Accenture had not overpaid, there was no need for computations: the amount of any refund—$0.00—could readily be determined. See *supra* note 4. And while the trial court expressed its intention to (try to) issue a memorandum in support of its order that would further articulate the reasons for its decision, it did not invoke Tax Rule 14 in doing so.[6] Indeed, when the trial court ultimately directed entry of

---

administrative agency orders or decisions that are subject to review in the Superior Court, either. *See* Super. Ct. Agency Rev. R. 1(*i*).

[6] The outstanding memorandum providing further reasons for denying the requested refund would not otherwise have affected the finality of the January 2018 order, either. *Cf. In re Na.H.*, 65 A.3d 111, 114–15 (D.C. 2013) (holding that time for appeal in neglect proceedings ran from issuance of written disposition order, where the order "indicated that additional written findings of fact and conclusions of law would be issued at a later date" but "nothing in that order suggested that it was contingent upon the issuance of future findings"); *United States v. Bradley*, 882 F.3d 390, 394 (2d Cir. 2018) ("The fact that the district court reserved the right to explain its . . . decision . . . does nothing to prevent the clock from running.").

the judgment under Tax Rule 14 over a year after its order disposing of the issues in the case, it did so "almost as a matter of equity" and not because it had been withholding entry of its decision.

We do not see a basis here—equitable or otherwise—for the delayed invocation of Tax Rule 14. Accenture contends that the parties understood that the January 2018 order did not start the appeal timeline because Tax Rule 14 was in play. It also suggests that the parties thought that Tax Rule 14 computations were on hold pending issuance of the court's memorandum. Even if this belief that no action on the Tax Rule 14 computations could be taken without the memorandum were reasonable,[7] Accenture waited over six months after the parties' "settlement discussions"[8] had stalled before inquiring about the status of the court's

---

[7] Accenture posits that the memorandum was necessary for the submission of computations under Tax Rule 14, as such computations are made "pursuant to the Court's findings and conclusions." Super. Ct. Tax R. 14(a). But the trial court gave a relatively comprehensive ruling from the bench that outlined its findings and conclusions. Accenture has identified no grounds to think that further reasons for denying the refund would have affected the calculation of the overpayment amount, which—the court's decision made perfectly clear—was zero.

[8] Accenture cites declarations it submitted to the trial court showing that "settlement discussions" (but not, notably, attempts to compute the amount of deficiency under the court's findings) continued for some months after the court's January 2018 order. We assume for present purposes that this information was properly before the trial court.

memorandum. Accenture's actions cannot be described as diligent.[9] Permitting an appeal to run from the February 2019 judgment—which was issued over a year after all the issues in the case had been resolved—would hamper "the orderly administration of justice and the 'deep-seated interest in promoting the finality of judgments.'" *Deloatch*, 229 A.3d at 492 (quoting *Siddiq v. Ostheimer*, 718 A.2d 145, 147 (D.C. 1998)); *see also* Super. Ct. Tax R. 14 (emphasizing "prompt[ness]"); *Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1104–05 (D.C. 2015) (invoking the equitable maxim that "equity aids the vigilant" (quoting *Simpson v. D.C. Off. of Hum. Rts.*, 597 A.2d 392, 403 (D.C. 1991))).

We do not suggest here that a trial court could never belatedly invoke Tax Rule 14 (in a case, for example, in which it turned out computations would be useful) or that it could never "withhold entry of its decision" for computations in a

---

[9] Particularly given the ambiguous and aspirational nature of the trial court's mentions of a forthcoming memorandum, waiting on the memorandum for this long was not reasonable for a counseled party. By analogy, a would-be appellant in a civil case waiting on a separate document setting forth the judgment under Super. Ct. Civ. R. 58 cannot wait forever to file a notice of appeal but must act after 150 days if the separate document has not been entered. Super. Ct. Civ. R. 58(c)(2)(B); *see also Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356, 1363 (D.C. Cir. 2007) (explaining the operation of the virtually identical Fed. R. Civ. P. 58(c)(2)(B), which "ensure[s] that parties will not be given forever to appeal" (quoting Fed. R. App. P. 4(a)(7) advisory committee's notes to 2002 amendments)). Similarly, even where a litigant did not receive notice of the entry of an appealable judgment or order, a motion to reopen the time to appeal must be filed within 180 days of the entry of that judgment or order. D.C. App. R. 4(a)(7).

case in which the computations were straightforward or even zero.  But on the facts of this case, the trial court could not enter a judgment purportedly under Tax Rule 14 after a significant period of time and, in doing so, give Accenture a new opportunity to appeal.  *See Fed. Trade Comm'n v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211 (1952) ("[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought."); *cf. Circle Liquors, Inc. v. Cohen*, 670 A.2d 381, 386 (D.C. 1996) (holding that the trial court did not have authority to extend the time period to file post-trial motions and that the trial court's sanctioning of the late filings did not affect the time to appeal); *cf. also* D.C. App. R. 26(b) (providing that "the court may not extend the time . . . to file a notice of appeal (except as authorized in Rule 4)").

**B.**

Having concluded that the final judgment at issue was that of January 23, 2018, we may entertain this appeal only if an equitable exception applies.  The District contends both that Accenture waived any argument for equitable tolling and that Supreme Court precedent forecloses the possibility that Rule 4(a)'s mandatory claim-processing rule is subject to equitable exceptions.  *See Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714–15 (2019) (holding that Fed.

R. Civ. P. 23(f), a mandatory claim-processing rule, is not subject to equitable tolling because "the text of the rule [does not] leave[] room for such flexibility").[10] We need not resolve either question because the circumstances here would not warrant equitable tolling in any event. *See Ware v. D.C. Dep't of Emp. Servs.*, 157 A.3d 1275, 1280 n.4 (D.C. 2017) (noting that equitable tolling requires "extraordinary circumstances").

Accenture's only argument for equitable relief rests on the "unique circumstances" doctrine—it contends that the trial court's representation that it would try to issue a written memorandum "affirmatively misled [it] into delaying the filing of [its] notice of appeal" but that it "timely filed" the notice of appeal after learning that no memorandum would issue. *Frain v. District of Columbia*, 572 A.2d 447, 451 (D.C. 1990) (quoting *Robinson v. Evans*, 554 A.2d 332, 335 (D.C. 1989)). This court has rejected application of the "unique circumstances" doctrine to claim-processing rules, *see Mathis*, 124 A.3d at 1103 n.26, but even by its own terms it would apply only where the appellant's reliance on the trial court's action or statement was reasonable, *Frain*, 572 A.2d at 451. Although Accenture

---

[10] This court has not addressed the question with respect to D.C. App. R. 4(a). *See Deloatch*, 229 A.3d at 493 n.12 (noting that the Supreme Court's decision in *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13 (2017), had "expressly reserved the question . . . 'whether mandatory claim-processing rules may be subject to equitable exceptions'" but not discussing the import of *Nutraceutical* (quoting *Hamer*, 138 S. Ct. at 18 n.3)).

may reasonably have believed that a memorandum was forthcoming, it was not reasonable on these facts for it to believe that such a memorandum would affect its filing deadline. See *supra* notes 6–7, 9; *In re Na.H.*, 65 A.3d 111, 114–15 (D.C. 2013) (order disposing of all issues, and not subsequent written findings and conclusions, started appeal timeline); *United States v. Fraser*, 330 A.2d 761, 762–63 (D.C. 1975). Moreover, as explained above, Accenture did not act diligently, which forecloses the possibility of equitable tolling. *See Mathis*, 124 A.3d at 1104–06; *see also Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006).

## III.

For the foregoing reasons, Accenture's appeal is dismissed as untimely filed.

*So ordered.*